## FRANK LANE v. STATE.

No. A.-9651.   Nov. 2, 1939.
(95 P. 2d 654.)

E. Moore, of Coalgate, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DOYLE, P. J.   This appeal is from a judgment of the district court of Coal county, rendered on March 23, 1939, in pursuance of a verdict convicting Frank Lane of larceny of domestic fowls and assessing his punishment at imprisonment in the state penitentiary for a term of one year.

It appears from the record that appellant, Frank Lane, and Joe Lawson were jointly charged with the crime of larceny of domestic fowls.

The information charges that in Coal county, on or about the 5th day of September, 1938, said defendants did unlawfully and feloniously take, steal and carry away about forty turkeys, the personal property of one George Harris, without the knowledge or consent of the owner.

Appellant's conviction was upon his separate trial.

The petition in error and case-made were filed in this court on May 19, 1939.

The only errors assigned are that the verdict and judgment are contrary to both the law and the evidence, for this reason the court erred in overruling the demurrer to the evidence and in denying appellant's motion for a new trial.

The only question presented for review by the record is the sufficiency of the evidence to support the verdict and judgment.

It appears from the evidence that George Harris, who lived 14 miles west of Coalgate, was the owner of about 80 turkeys on the date alleged; Mr. Harris missed about 40 of his turkeys, made a search for them, and on Septem-

ber 24th, he found 40 head of them near Bill Perry's place, a mile and a quarter from his house, then he went to the county seat and notified Marvin Balch, the county attorney, and they went out to Bill Perry's, and Mr. Harris picked out his turkeys by his mark, a webb split on the right foot between toes and a nick from the first joint of the left wing.

Bill Perry testified that he lives four miles south of Tupelo, that he was present when George Harris and two other men put a flock of turkeys into his lot, and Mr. Harris picked out 40 of them that had his mark; that he had seen these turkeys there for eight or ten days before, and that he had 23 turkeys himself there, that he lives about a mile and a quarter from the defendant, Frank Lane.

Theodore Johnson testified that he lives a quarter of a mile south of Tupelo, was acquainted with the defendant, Frank Lane, that about 11 o'clock on the night of September 5th, Frank Lane and Joe Lawson came to his house and told him their truck had broke down a little over half a mile south of his house, and he got up and went with them. Riley High and his wife were at the truck, a 36 Chevrolet pick-up, and there were turkeys in it; Lane said he was hauling them for these people; that he took Mr. Lawson and Mr. High and his wife back to their home to get their trailer, their place was one mile east and a mile south of Hudson's store, and the pick-up truck was something like three or four miles north and east of the store; that coming back his car went dead, and he waited there until they came on, when they came by they would not pull his car, so he rode on with them to the pick-up. Mr. Lane was there and the turkeys were still in the truck, they backed the trailer up to the pick-up and put the turkeys into the trailer, Lawson and the Highs went back

with the turkeys in the trailer, and Frank Lane took him home in his pick-up.

Riley High testified he was staying out there with Joe Lawson, his wife's stepfather; about the 5th of September, 1938, Joe Lawson penned up some turkeys there and they were taken away the night of the 5th by Frank Lane and Joe Lawson; that Joe Lawson asked him and his wife if they wanted to go with them to get their furniture, Frank Lane had been there that evening and looked at the turkeys. When he drove up that night they were in bed. He came in and sat on the side of the bed, and asked him if he wanted to go to Okmulgee and get his furniture. He said, "I will take you up there for $6," and he answered, "I have not got the money and I will have to pick it out in cotton." So they loaded the turkeys, then pulled out and got over this side of Tupelo and the car broke down, something went wrong with the gears. Frank and Joe went to Tupelo to get a truck and he and his wife waited there until they came back with this man Johnson. They did not bring the chain to pull the car in, so Joe asked Johnson how much he would charge to take them home and he said 50 cents. Johnson drove them to about a quarter of the house and they got out and walked to the house. Joe got his trailer and he got his car and they drove back to the pick-up. Joe and Frank loaded the turkeys into the trailer, and Joe started back with them. When they got back just this side of Goose creek the car had a flat. It was getting pretty close to daylight when the truck broke down. Joe turned the turkeys out, got the car started and drove about a half a mile, and the rear axle broke, so he went after a team and it was getting daylight when he came back, that he got a team from Louis Lane and pulled the car and trailer in; that Louis Lane is the son of Frank Lane.

. Obie Hudson testified that he runs a store three and a half miles south of Clarita, and on the night of the 5th day of September some people came there and got gas. Theodore Johnson was one; he was headed north; that he knows Frank Lane and Joe Lawson. Frank Lane lived a mile straight east and a little north of his store, and Joe Lawson lived a mile east and a mile south of the store. That his store is a mile south of Goose Creek, that he was driving to Allen the next morning and saw Joe Lawson's car there, and noticed that the trailer was empty.

Mrs. High testified that on the 5th of September she was living with her stepfather, Joe Lawson, the 5th was on Monday, Labor Day. That night Frank Lane came over to take some turkeys off the place that were supposed to belong to him and Mr. Lawson. They were all in bed asleep. Uncle Frank wanted to make a deal to go to Okmulgee to get their furniture, they talked about 20 minutes and decided to go, and were to give him $6 to haul their things, they started on with the turkeys and got up close to Tupelo and the truck broke down. Joe and Uncle Lane went away and got Mr. Johnson to come and fix the truck, and with her husband she stayed with the truck. Up to this time Frank Lane said the turkeys belonged to him. When Mr. Johnson came up, he said those turkeys belonged to Joe Lawson and Gladys. That just before this case was filed Frank Lane asked her and her husband to leave and go to Wichita Falls to pick cotton, and she said, "Uncle Frank, we have not got the money, and the kids have not got any clothes", and he said, "Uncle Frank will get the clothes", and her husband said he was not going to do it, and Frank Lane walked away. That Joe Lawson was in jail in this case at that time.

Walter Clark, sheriff, testified that he made a search for the turkeys and went to Joe Lawson's house and there

talked to Joe Lawson and Frank Lane, that Frank Lane said that he and Joe Lawson were 50 and 50 on some turkeys, and Joe decided to sell his part and made a deal with Riley High to go to Okmulgee to get his furniture, and High was to pay him $6 for the trip. That they loaded the turkeys up at Joe's in his pick-up; on the way they broke down and he sent the turkeys to Joe's house; that he asked him how he knew they hauled them back and he said that he knew that, because the turkeys were out there and he offered to show them to him that night. That he arrested Joe Lawson and put him in jail that night.

When the state rested the defendant interposed a demurrer to the evidence which was overruled.

A number of witnesses qualified as character witnesses. Each testified that Frank Lane's general reputation in that community for honesty was good.

Hettie Ann Lane, wife of the defendant, testified that on the 5th day of September, somewhere about dark, her husband left home and said he was going to Okmulgee with Riley High and his wife, that they were at their home for dinner that day. Riley High said, "We will go tonight". Her husband said, "Allright, and if you say so we will go, it will cost you $6 and your gas bill." That last year they lived with Joe Lawson and when they moved away they left five hens and a gobbler with him to raise on halves, on Sunday before Labor Day they went down there to see the turkeys, they were in the barn. That they raised eight turkeys at their place this year.

As a witness in his own behalf the defendant testified that he had a son and daughter married and a little girl at home with his wife. That Joe Lawson was his wife's brother and they lived out there nearly a year; that when he moved away he left five hens and a gobbler with Lawson, that during the spring and summer he saw the tur-

keys there. The night of September 5th, he was to move Riley High; Joe Lawson said he had some turkeys up, some 25 or 30, maybe more, and Joe said he was leaving the country and selling out, and he would like to sell his turkeys, and he told Joe that as to his part he could leave them but that he could sell his part. That when he took the turkeys he thought they were the turkeys that Lawson had raised on halves, that when he went to Joe Lawson's that night he found Riley High and his wife in bed, they talked about the trip a little, and after that were ready to go. Joe Lawson said he had the turkeys up and wanted to take them, that the prices were up and he could get more money out of them at Okmulgee and they all insisted on taking the turkeys. Riley High and Lawson helped to load the turkeys, and they started on with them, and drove to about a mile south of Tupelo when some cogs stripped on the transmission and he told them he could not take the turkeys to Okmulgee. They then walked up to Theodore Johnson, an automobile mechanic, and told him he had stripped his gears on his transmission and asked him to come and pull the truck up to his place. That Riley High and his wife stayed at the truck, and when they returned in Johnson's truck, Lawson and the Highs decided to go back home and get a car and trailer and come back to take the turkeys home. That he asked Johnson what he would charge to take them to their place, he said 50 cents, and he took them; that later in the night they came back and backed their trailer up to the pick-up, loaded the turkeys on the trailer and drove south with them; that Johnson got in the pick-up with him and he drove to his place; that he returned home the next day. That he asked Lawson if he got back with the turkeys and he said they did. That after Lawson was arrested he had a conversation with Mrs. High, and she said, "Frank, we are in a devil of a fix, we ain't got no money.

means or friends, and Riley has got a brother at Wichita Falls, Tex., and if I could get to him, he has plenty of money and would help us out of this trouble," and he told her, "Well, can't you fix your car and go and see him", and she said, "I would like to make a deal with you to go down with us and bring us back", and he told her he was busy gathering his crop, and he could not make the trip, and that was the conversation; that he never told her that he wished she would leave the state; that he thought these turkeys were the ones Joe Lawson had raised on the halves.

While the evidence is conflicting as to whether or not appellant knowingly participated in the commission of the offense charged, it was the sole province of the jury to judge the weight of the evidence and the credibility of the witnesses. The jury accepted as true the testimony of the state's witnesses, and having done so, this court would not be authorized to substitute its judgment for that of the exclusive triers of the facts.

It is only when there is a total failure of substantial evidence of the elements, or some one element of the offense that this court on appeal is permitted to reverse a conviction on the ground that the evidence is insufficient to sustain it.

The instructions of the court, to which no objection was made, fully covered the law of the case, and were as favorable to the defendant as the law warranted.

A careful examination of the record leads to the conclusion that appellant has no substantial ground for complaint, either of the rulings of the court or the verdict of the jury. As shown by the record, appellant had a fair and impartial trial, and the judgment of the lower court should be affirmed. It is so ordered.

BAREFOOT and DAVENPORT, JJ., concur.